1 | James M. Wood (SBN 058679)
REED SMITH LLP
2 | 1999 Harrison Street, Suite 2400
Oakland, CA 94612-3572
3 | Telephone:    510.763.2000
Facsimile:    510.273.8832
4 | Email: JMWood@reedsmith.com

FILED

MAR - 8 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

5 | Tiffany Renee Thomas (SBN 239085)
REED SMITH LLP
6 | Two Embarcadero Center, Suite 2000
San Francisco, CA 94111-3922
7 | Telephone:    415.543.8700
Facsimile:    415.391.8269
8 | Email: Tthomas@reedsmith.com

E-Filing

9 | Attorneys for Plaintiff Stanmore C. Cooper

10

11 | UNITED STATES DISTRICT COURT

12 | NORTHERN DISTRICT OF CALIFORNIA

C 07                 1383

13

| STANMORE C. COOPER, a California Resident, | Civil Case No.: _____ |
|---|---|
| Plaintiff, | **COMPLAINT FOR:** |
| v. | **1. VIOLATION 5 U.S.C. § 522A (THE PRIVACY ACT OF 1974)** EDL |
| FEDERAL AVIATION ADMINISTRATION, SOCIAL SECURITY ADMINISTRATION, UNITED STATES DEPARTMENT OF TRANSPORTATION, | **2. VIOLATION OF ARTICLE I, SECTION 1 OF CALIFORNIA CONSTITUTION (INVASION OF PRIVACY)** |
| Defendants. | **AND DEMAND FOR JURY TRIAL** |

21 | Plaintiff Stanmore C. Cooper ("Cooper") alleges as follows:

23 | **PRELIMINARY STATEMENT**

25 | 1.    This action arises from the extensive exchange of protected, private medical

26 | information and records among the Federal Department of Transportation, the Federal Aviation

27 | Administration, and the Social Security Administration under the auspices of "Operation Safe Pilot".

1   Each exchange was violative of the Privacy Act of 1974 (5 U.S.C. § 522a) and Article I, § 1 of the

2   California Constitution.

4   **JURISDICTION AND VENUE**

5   2.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C.

6   §1331 and 5 U.S.C. § 552a(g)(5) because this action seeks to redress a violation of the Privacy Act

7   of 1974. This Court has supplemental jurisdiction over the remaining cause of action alleged

8   pursuant to 28 U.S.C. § 1367(a). Venue is proper in this judicial district pursuant to 5 U.S.C. §

9   552a(g)(5), as Plaintiff resides in this district.

11   **PARTIES**

12   3.      Plaintiff Stanmore C. Cooper (referred to hereafter as "Cooper" or "Plaintiff"), an

13   individual, is, and at all times mentioned was, a resident of the City and County of San Francisco,

14   California.

15   4.      Defendant Federal Aviation Administration (referred to as "FAA") is an agency of

16   the United States Department of Transportation. FAA regulates civil aviation in the United States,

17   including the licensing of pilots.

18   5.      Defendant United States Department of Transportation (referred to as "DOT") is a

19   Cabinet-level executive department of the United States government concerned with the national

20   transportation system. FAA is a branch of DOT.

21   6.      Defendant Social Security Administration (referred to as "SSA") is an independent

22   agency of the United States government which pays retirement, disability and survivors benefits to

23   workers and their families, and administers the Supplemental Security Income program. SSA is also

24   responsible for the issuance of Social Security numbers.

25   7.      Defendants FAA, DOT, and SSA will be referred to as "Defendants."

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

COMPLAINT

## STATEMENT OF FACTS

## BACKGROUND FACTS

8.    Defendant FAA issued Cooper his Private Pilot Certificate on September 11, 1964. With over 2,000 hours as Pilot-In-Command since then, Cooper has never been in any aviation-related incident or accident. From September 11, 1965 to March 21, 2005, FAA never charged Cooper with violating any federal aviation regulations. Cooper is currently licensed by FAA as a Private Pilot, Single Engine Airplane Land.

9.    While licensed, Cooper discovered in 1985 that he was HIV-positive. Because FAA at the time would not issue a medical certificate to a HIV-positive individual who was taking anti-retroviral medications, he voluntarily grounded himself and did not renew his medical certificate. A medical certificate is issued as a condition to receiving a Private Pilot Certificate. Mr. Cooper later accepted a position with Visa International where he was employed as a Senior Network Engineer.

10.    In July, 1994, Cooper applied for and received an FAA Third Class Medical Certificate without disclosing his HIV status or listing the anti-retroviral drugs he was taking. Cooper used this Medical Certificate solely to act as "Safety Pilot" while flying with friends maintaining instrument flying currency, and was never used for Cooper to act as pilot-in-command. Between the July, 1994, Medical Certificate application and his subsequent Medical Certificate application in September, 1998, FAA records show Cooper did not log any flight time since Cooper's total hours on both applications was 1,712 hours.

11.    By June 1995, Cooper had lost considerable weight and suffered from peripheral neuropathy in his lower extremities, chronic diarrhea, and a failing immune system due to his HIV-infection. Because of his failing health, in August 1995, Cooper left his position at Visa International and applied for Social Security long-term disability benefits based upon these HIV-related complications. His HIV status and complications were the basis for the disability claim and were disclosed in his Social Security application.

12. In applying for these Social Security benefits, SSA advised Cooper about his privacy rights and affirmed that his personal medical information would be shared only with other federal agencies when this information would be needed to assist in the administration of programs under the Social Security Act and other federal, state, and local health and income maintenance programs concerning determinations related to eligibility, benefit amounts, or benefits status. *See* Social Security Online web article entitled "Government Information Exchange," attached hereto as Exhibit A. Cooper believed this information and relied upon it to be accurate and true. Cooper began receiving Social Security disability benefits in August 1995.

13. In early 1996, a new class of anti-HIV drugs, protease inhibitors, became available to patients with HIV, but due to manufacturing limitations, access to these new drugs was determined by a lottery. Cooper was selected to participate in the limited access program to these protease inhibitors and began taking them, as prescribed by his health care provider, in combination with previously available nucleoside and non-nucleoside reverse transcriptase inhibitors. As a result, Cooper's health care providers determined that his health rapidly improved. His viral load plummeted, his peripheral neuropathy and chronic diarrhea subsided, and he returned to his previous weight and energy.

14. After one year on disability, Cooper terminated his receipt of Social Security benefits and returned to work at Visa International in August 1996 as a Chief Network Architect.

15. In early 1998, Cooper learned that FAA had, in November of 1997, begun issuing "special issuance" medical certificates to HIV-infected persons. With his renewed health and news of certificated HIV-positive pilots, Cooper became interested in obtaining a Third Class Medical Certificate which would permit him to resume his normal flying activities.

16. Plaintiff is informed and believes, and thereon alleges, that at the time FAA had not made the eligibility requirements for the "special issuance" certificates public; interested applicants were required to submit all of their medical records from the date of their infections to FAA for review.

17. Uninformed as to FAA Special Issuance Medical Certificate eligibility requirements and concerned that he would be arbitrarily disqualified, Cooper did not submit this information.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    Instead, Cooper applied for and obtained a medical certificate in 1998 without disclosing his HIV

2    status on his application.  Cooper obtained his Third Class Medical Certificate in order to resume his

3    normal flying activities.

4         18.    In 2000, Cooper saw the first published certification criteria for issuance of medical

5    certificates to HIV-infected persons. *See* Federal Aviation Administration article entitled

6    "Guidelines for the Medical Certification of Airmen with HIV-Related Conditions," attached hereto

7    as Exhibit B.  He then verified that his cell counts and viral loads were within the applicable criteria

8    and in 2000, 2002, and 2004 applied for and obtained medical certificates without disclosing his

9    HIV status.

10        19.    In February 2005, Cooper read a magazine article that announced that FAA

11   Aeromedical Certification Division and the Civil Aeromedical Institute had issued a policy statement

12   which indicated that HIV-infected individuals who voluntarily revealed their previously unreported

13   infections, submitted their medical records, and did not have histories of aviation accident or

14   incidents or positive drug tests would not be subject to disciplinary action. *See* Virtual Flight

15   Surgeons Inc. article entitled "HIV/AIDS," attached hereto as Exhibit C. As a result of reading this

16   article, Cooper began the process of collecting his medical records for submission to FAA but did

17   not have the opportunity to submit them.

18

19                    **DISCLOSURE OF COOPER'S HIV STATUS**

20        20.    Plaintiff is informed and believes, and thereon alleges, that following the events of

21   September 11, 2001, SSA received numerous proposed investigative projects from various agencies

22   concerning the Social Security number ("SSN") misuse by those with access to critical government

23   infrastructure sites.

24        21.    Plaintiff is informed and believes, and thereon alleges, that in 2003, SSA reviewed a

25   proposed project submitted by the DOT Office of Inspector General entitled "Operation Safe Pilot."

26   The sole purpose of "Operation Safe Pilot" was to identify any active FAA-licensed pilot who had

27   obtained a license though the misrepresentation of a SSN on an FAA application.  The review was

28   not intended to verify benefit eligibility, effectuate savings to SSA, or to terminate benefits.  The

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  sole purpose of the review was to ensure that pilots were who they said they were, and on this basis,
2  SSA approved this project.

3      22.    Plaintiff is informed and believes, and thereon alleges, that FAA not only provided
4  SSA with the names and SSNs of licensed pilots needed to effectuate the stated purposes of
5  "Operation Safe Pilot," but that it also provided SSA with complete copies of pilots' medical
6  certification records and files. Based on this information, SSA discovered that a number of FAA-
7  licensed pilots under review for potential SSN misuse were at the time drawing benefits from SSA
8  based on total disability while simultaneously certifying their medical fitness to FAA. As Cooper
9  ceased receiving SSA benefits in 1996, he did not fall into this category of pilots.

10     23.    Plaintiff is informed and believes, and thereon alleges, that SSA reported its finding
11  to FAA and provided FAA with the Social Security files, including confidential medical records, of
12  licensed pilots who were suspected of failing to disclose diagnoses of significant illness, including
13  SSA files concerning Cooper. These files contained the confidential information of Cooper's HIV
14  status which under state and federal law, as well as under SSA guidelines, is confidential and
15  protected from disclosure by the Privacy Act and the California Constitution.

16     24.    The disclosure of Cooper's confidential information was not pursuant to any "routine
17  use" or legitimate law enforcement function because it was outside of the scope of the stated
18  purposes of the Operation Safe Pilot program.

19     25.    Plaintiff is informed and believes, and thereon alleges, that based solely upon the
20  illegal disclosure and review of Cooper's confidential Social Security files and medical records,
21  FAA issued an Emergency Order of Revocation of Cooper's private pilot certificate on March 22,
22  2005. *See* Emergency Revocation Order, attached hereto as Exhibit D.

23     26.    On March 22, 2005, Lisa Glazzy, who identified herself as a special agent with the
24  Department of Transportation, left a message on Cooper's home phone stating that DOT wished to
25  discuss some "irregularities" in his FAA medical certificate application. Cooper returned the call
26  and scheduled a meeting to be held on March 23 at a local Starbucks with Agent Glazzy and an
27  Agent Stephen Jackson.

28

27.     At the meeting, Agents Glazzy and Jackson showed Cooper numerous records from his Social Security disability file, which, according to Agent Jackson, DOT obtained as a result of a "computer match" between SSA and FAA records. The agents also provided Cooper with a copy of the revocation order and demanded his pilot certificate, medical certificate, and log book. Cooper surrendered all three items to Agents Glazzy and Jackson.

28.     Learning that SSA had disclosed his HIV-status to other federal agencies left Cooper extremely upset, anxious, and fearful of social ostracism.

29.     Cooper timely appealed the revocation, and in the process obtained a copy of FAA's evidentiary file. This file contained portions of Cooper's SSA file, including medical records sent to SSA which indicated that Cooper received treatment for HIV-related infection(s).

30.     On or about August 30, 2005, Cooper was indicted on three felony counts of making a false statement to a government agency based solely upon his non-disclosure of his HIV status. Each of these counts carried with them a fine of up to $250,000 and a maximum of five years in prison.

31.     On March 7, 2006, Cooper pleaded guilty to a single misdemeanor pursuant to a plea agreement. As a result, the Court fined Cooper $1,000 and sentenced him to two years of unsupervised probation, but allowed him to pursue recertification as a private pilot.

32.     After the conclusion of the criminal case, Cooper began the process of regaining his pilot certificate. FAA conducted a review of Cooper's medical history, which spanned more than twenty years. At age 64, Cooper was subjected to cognitive screening tests in which he scored in the 50th percentile or higher when measured against current airline captains age 55-60. Cooper then re-entered ground school and submitted to oral and written examinations as well as a flight test.

33.     On September 11, 2006, forty-two years to the day that he first obtained his pilot's license, Cooper received a medical certificate and his private pilot's certificate.

34.     Although his right to fly as a HIV-positive pilot has been vindicated, Cooper has suffered and will continue to suffer as a direct and proximate result of the illegal and unconstitutional violation of his right to privacy humiliation, embarrassment, mental anguish, fear of social ostracism, and other severe emotional distress.

1

2

## FIRST CLAIM FOR RELIEF

3

### Violation of the Privacy Act of 1974 - 5 USCS § 552a
### Against All Defendants

4

5

35.    Plaintiff re-alleges paragraphs 1 through 33 of this Complaint as if fully set forth

herein.

6

7

36.    Among its many other functions, the Privacy Act (Act), 5 U.S.C.S. § 552a, safeguards

individuals from capricious dissemination of personal information by the government. Subsection

8

9

(b) of the Act, forbids an agency of the United States from disclosing information in its files to any

person or to another agency without the express consent of the individual to whom the information

10

pertains. 5 U.S.C.S. § 552a(b). This provision is subject to several exceptions, none of which apply

11

to the present case.

12

37.    A civil action for damages lies whenever any agency violates any of the provisions of

13

The Privacy Act in such a way as to have an adverse effect on an individual. 5 U.S.C.S. §

14

552a(g)(1)(D).

15

38.    Each exchange and use of Cooper's confidential medical information about his HIV

16

status among the Defendants, and each of them, without Cooper's consent, as described herein,

17

constituted a violation of the Privacy Act for each such disclosure and use of the information.

18

39.    Defendants' unauthorized use of Cooper's confidential medical information,

19

including the disclosure of his HIV status and any use of or reliance upon such information,  has

20

caused Cooper to suffer humiliation, embarrassment, mental anguish, fear of social ostracism, and

21

other severe emotional distress.

22

40.    Cooper's humiliation, embarrassment, mental anguish, fear of social ostracism, and

23

other severe emotional distress were proximately caused by Defendants' unauthorized disclosure and

24

use of his confidential medical information.

25

41.    In disclosing Cooper's medical records, Defendants each acted intentionally and/or

26

willfully and outside of the stated scope of "Operation Safe Pilot."

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

42.    As a proximate result of each of the Defendant's disclosure and reliance upon the illegal disclosure of this confidential information, Cooper suffered, and will continue to suffer, "adverse effects" in the form of general and special damages, including, but not limited to, pain and suffering, humiliation, embarrassment, mental anguish, fear of social ostracism, and other severe emotional distress in excess of $1,000.

## SECOND CLAIM FOR RELIEF

### Invasion of Privacy – Article I, Section 1 of the California Constitution
### Against All Defendants

43.    Plaintiff re-alleges paragraphs 1 through 41 of this Complaint as if fully set forth herein.

44.    Article I, Section 1 of the California Constitution grants to each person the inalienable right of privacy. Cal. Const. art. 1, § 1. Protection against governmental intrusion falls within the sphere of the constitutional right to privacy, White v. Davis, 13 Cal. 3d 757, 775 (1975), as does protection from detailed disclosure of one's medical history, Pettus v. Cole, 49 Cal. App. 4th 402, 440-447 (1996).

45.    Given the circumstances described in this Complaint, Cooper has had and continues to have a legally protected privacy interest in the confidentiality of his Social Security records and FAA medical certification files, as well as a reasonable expectation that those records and files would remain private and would not be disclosed to or relied upon by third parties without his consent.

46.    Each Defendant's disclosure of Cooper's medical information as well as their reliance upon these illegally disclosed records constitutes a serious invasion of Cooper's privacy interest and violated Cooper's right to privacy as protected by Article I, Section 1 of the California Constitution.

47.    As a proximate result of Defendants' disclosure, Cooper suffered, and will continue to suffer, "adverse effects" in the form of general and special damages, including, but not limited to, pain and suffering, humiliation, embarrassment, mental anguish, fear of social ostracism, and other severe emotional distress in excess of $1,000.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1

## **PRAYER**

2     WHEREFORE, Plaintiff, Stanmore C. Cooper, prays for judgment against Defendants, and

3  each of them, as follows:

4     1.     For general damages in an amount according to proof at trial and as permitted by law;

5     2.     For special damages in an amount according to proof at trial and as permitted by law;

6     3.     For prejudgment interest in an amount according to proof at trial;

7     4.     For reasonable attorneys' fees and costs of suit incurred herein pursuant to U.S.C.S. §

8         552a(g)(1)(B); and

9     5.     For such other and further relief as the Court may deem just and proper.

10

11  DATED:  March 8, 2007

                            REED SMITH LLP
12

13

                            By
14                            James M. Wood
                            Tiffany Renee Thomas
15                            Attorneys for Plaintiff
                            Stanmore C. Cooper
16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT

1

## DEMAND FOR JURY TRIAL

2

3    Plaintiff Stanmore C. Cooper hereby demands a jury trial as to all triable issues in this action.

4

5    DATED: March 8, 2007

6                                        REED SMITH LLP

7

8    By _____
                James M. Wood
9                Tiffany Renee Thomas
                 Attorneys for Plaintiff
10               Stanmore C. Cooper

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT

**EXHIBIT A**

Government Information Exchange Privacy Information

# Government Information Exchange

## Social Security Online

www.socialsecurity.gov    Home  Questions?    How to Contact Us  Search

 **Privacy Information**

**Exchange Index**

Government Information Exchange

**Policy**

Privacy Information

**Security**

Security Information

**Technical**

Support Documents

**Existing Services**

Connections

Projects

**Help and Information**

Glossary

Regions

Other Agencies

Navigation

Feedback

The privacy of all personal information SSA maintains in its databases is protected and controlled by a number of Federal statutes, including section 1106 the Social Security Act, the Privacy Act of 1974, section 6103 of the Internal Revenue Code, and related Social Security regulations and policies.

The Privacy Act and related legal authority noted above allows SSA to disclose information from its program records to Federal, State, and local agencies for certain "routine uses." These routine uses, defined in the Privacy Act at 5 U.S.C. § 552a (a)(7), are permissive uses of information collected by SSA that, "with respect to the disclosure of a record, the use of such record for a purpose which is compatible with the purpose for which it was collected."

Thus, when a Federal, State, or local agency requests data from SSA, the agency must ensure that the purpose of the request is compatible with administration of its own programs. Compatibility is established when the Federal, State, or local agency requester is asking for data to assist in the administration of programs under the Social Security Act and other Federal, State, and local health and income maintenance programs concerning determinations related to eligibility, benefit amounts or benefit status. SSA's Office of Public Disclosure (located in the Office of the General Counsel) is responsible for evaluating

2-C: 0353

Government Information Exchange Privacy Information

these requests to ensure that compatibility is
established and that a specific routine use is
present in the applicable Privacy Act system of
records (from which data will be disclosed).

**Exchange Index**

2-C: 0354

**EXHIBIT  B**

## Federal Aviation Administration
800 Independence Ave. SW
Washington,DC 20591

**INFORMATION:** Guidelines for the                                    Jun 1.1998
Medical certification of airmen with HIV-related conditions
                                                                       MGL-95

**From:** Federal Air Surgeon, AAM-1

**To:**      Director. Civil Aeromedical Institute, AAM-3
             Manager. Aeromedical Certification Division, AM-300
             Regional Flight Surgeons
             Flight Surgeons

This Medical Guideline Letter (MGL) amends existing policy regarding the airmen medical certification of persons infected with Human Immunodeficiency Virus (HIV).

Persons who are infected with the HIV and who do not have a diagnosis of Acquired Immunodeficiency Syndrome (AIDS) will be considered for any class medical certificate, if otherwise qualified. The diagnosis of AIDS will be based on the criteria established by the U.S. Public Health Service Centers for Disease Control and prevention (CDC) except a low CD4 cell count will not necessarily exclude an applicant from certification. Decisions will be based on the individual medical evaluation and followup monitoring. Such certification will be through the special issuance process.

Persons on antiretroviral medication will be considered only if the medication is approved by the U.S. Food and Drug Administration and is used in accordance with an acceptable drug therapy protocol. Acceptable protocols are cited in *Guidelines for the Use of Antiretroviral Agents in HIV-Infected Adults and Adolescents* developed by the Department of Health and Human Services Panel on Clinical Practices for Treatment of HIV Infection.

Application for special issuance must include reports of examination by a physician knowledgeable in the treatment of HIV-infected persons and a medical history emphasizing symptoms and treatment referable to the immune system. In addition, these reports must include a "viral load" determination by polymerase chain reaction (PCR),CD4+ lymphocyte count, a complete blood count, and the results of liver function tests. Assessment of cognitive function (preferably the *Congscreen* or other test battery acceptable to the Federal Air Surgeon) must be submitted. Additional cognitive function tests may be required as indicated by the results of the cognitive tests. At the time of initial application, viral load must not exceed 1,000 copies per milliliter of plasma, and cognitive testing must show no significant deficit(s) that would preclude the safe performance of airmen duties.

Followup evaluations of persons granted certification will include quarterly determinations of viral load by PCR, a CD4+ cell count, and the results of other laboratory and clinical tests, including cognitive tests, deemed appropriate by the treating physician. These will be included in a written status report provided by the treating physician every 6 months. In addition, the results of cognitive function studies will be required at annual intervals for first-and second class medical certification. Third class applicants will be required to submit cognitive function studies every 2 years.

Adverse clinical findings, including significant changes in cognitive test results or an increased viral load exceeding 5,000 copies per milliliter shall constitute a basis for withdrawing medical certification.

Exception to the MGL, if any, will be based on individual consideration by the Federal Air Surgeon.

       Original Signed by
       JON L. JORDON, M.D.

Jon L. Jordon, M.D.

3-C: 0236

**EXHIBIT  C**

Virtual Flight Surgeons, Inc.
WORLD'S LEADER IN FAA MEDICAL CERTIFICATION EXPERTISE.      PROFESSIONAL. CONFIDENTIAL... OUR PHYSICIANS. YOUR SOLUTION.

### HIV /AIDS

#### Introduction

HIV seropositive pilots using antiviral medications are not considered eligible for any class of medical certificate under the "General Medical Condition" clauses of FAR 67.113, .213 and .312, paragraphs (b) and (c) per Federal Air Surgeon policy.  However, as a result of the combined efforts of several previously disqualified pilots and aviation medicine specialists/advocates, including the physicians of Virtual Flight Surgeons and the ALPA Aeromedical Office, the Federal Air Surgeon has liberalized this previously restrictive policy.  See the ALPA Aeromedical Office petition to the Federal Air Surgeon, March 28, 1997.  Now, many HIV+ pilots using antiviral medication may hold FAA medical certificates under the Special Issuance provisions of FAR Part 67.401.

#### History

In 1997, the Federal Air Surgeon changed the FAA policy on grounding all pilots/controllers with AIDS (Acquired Immunodeficiency Syndrome) and those HIV positive pilots/controllers using anti-viral medications after considerable debate and review of the scientific literature.  The main area of concern dictating past and current policy centers on the potential for neurocognitive impairment due to HIV, AIDS dementia or the medications used to treat the condition, any of which could compromise a individual's ability to safely operate in the aviation environment.

The new policy allows granting a Special Issuance Authorization to some previously disqualified pilots in these categories. Each case must be reviewed individually.  The first pilot using medications for HIV/AIDS was certified by the Federal Air Surgeon in November 1997.  Since then, more than a dozen other pilots have applied and been certified under the Special Issuance provisions of FAR Part 67.401.  VFS physicians have represented the majority of these cases with the FAA.

In the past, HIV positive pilots have been allowed to fly with a standard medical certificate as long as they were asymptomatic and were not taking anti-viral medications (including protease inhibitors). Recent advances in the treatment of HIV leads many physicians to treat asymptomatic patients with medication early in the condition. The goal is to reduce the likelihood of progression to AIDS and to lengthen the disease free state. This early treatment is now the standard for medical care.

#### The Dilemma

Until the November 1997 change in FAA policy, HIV+ pilots using antiviral medication could not legally fly. Professional pilots often faced the loss of employment, and subsequently, the loss of their medical insurance benefits. Without medical coverage, many expected their health status and longevity to decline. Certainly their quality of life would deteriorate. If they declined to take medication to allow continued flying, their medical condition could deteriorate rapidly or they could have subtle neurologic deficiencies affecting their flying.

Confronting this dilemma, some pilots chose to conceal their condition from the FAA and their AME in order to maintain their certification. This was not unlike the situation prior to the granting of Special Issuance medical certificates for pilots with heart disease, diabetes, substance abuse and other medical conditions where revealing the diagnosis or treatment meant certain, permanent medical disqualification.

One problem with concealment is that the FAA loses the ability to monitor these pilots for potentially safety compromising conditions. Most of the pilots' treating physicians do not have the aeromedical expertise to

assess the potential risks to safe operation of aircraft. Therefore, pilots who have not reported their treatment for HIV fly in fear of being discovered by the FAA and may not reveal all pertinent medical issues with the treating physician.

## Current FAA Policy on HIV Seropositivity

The new FAA policy is a significant step toward enhanced monitoring cooperatively with the pilot, the FAA Aeromedical Certification Division and the treating physician. The result will be both enhanced aviation safety and personal health. Not all HIV affected pilots will be granted Special Issuance medical certificates under the FAA protocol however.

Those pilots who are HIV positive or are currently asymptomatic following recovery from an AIDS-defining illness may be certified if they meet certain conditions. They must be taking FDA approved medications used in accordance with the "Guidelines for the Use of Antiretroviral Agents in HIV-Infected Adults and Adolescents " and tolerate these medications well. HIV viral load should be less than 1,000 copies/ml by PCR. CD4+ counts should be stable. Laboratory studies should be near normal and the pilot should be under the regular care of a physician experienced in treating HIV and AIDS.

In a 2003 policy change, the FAA now will allow pilots with a history of any AIDS defining illness (AIDS-DI) to hole a Special Issuance. A history of PCP as an initial presentation of HIV disease was first granted a Special Issuance by the Federal Air Surgeon in October 2000.   Prophylactic medications for suppression of opportunistic infections are permissible. The certification criteria for an AIDS-DI are some what more stringent than for pilots who are only HIV-positive. (See chart below)

The pilot will also be required to undergo regular testing for neurocognitive function compared to other aviators.  Cognitive testing by the CogScreen®-Aeromedical Edition is strongly preferred although a battery of alternate tests is acceptable if the CogScreen is not available.  If the test results are satisfactory, the pilot may be granted a Special Issuance Authorization valid for a limited period (6 months to one year). Continued certification is contingent on stability of the condition and repeat testing.  Neurocognitive testing is required annually for ATCs, First and Second Class certification, and every two years for Third Class certification.

The current FAA protocol for certification of HIV positive pilots remains flexible and requirements may be added or deleted from those listed below. Each case is considered individually. The current policy requires:

| Parameter | Initial Certification | | Recertification | |

| Parameter | Initial Certification | | Recertification | |
|---|---|---|---|---|
| AIDS-DI? | NO | YES | NO | YES |
| Viral Load (PCR) if CD4 >350 | < 1,000 | < 1,000* | < 10,000** | < 10,000** |
| Viral Load (PCR) if 200<CD4<350 | < 1,000 | Ineligible | < 5,000** | Ineligible |
| CD4 < 200 | Ineligible | Ineligible | Ineligible | Ineligible |
| AIDS-DI cured | | # > 6 months | | # >6 months |
| Labs | ## Required | ## Required | ## 6 months | ## 6 months |
| CogScreen AE | Required | Required | @ | @ |
| Clinical cognitive assessment | Required | Required | Quarterly | Quarterly |
| CMV Retinitis | | @@ | | @@ |

2

1-C: 0009

- * Viral load by PCR on two consecutive test at least one month apart
- ** Viral loads done at least quarterly
- # AIDS defining illnesses resolved at least 6 months
- ## Stable CD4+ count (> 200, see above for viral load)
- ## Complete Blood Count (CBC)
- ## Liver Function Tests (LFTs)
- ## Renal Function Tests (Kidneys)
- @ "Normal" neurocognitive function testing, CogScreen AE is preferred;
  Required annually for 1st and 2nd Class, every 2 years for 3rd Class
- @@ If CMV retinitis is present, a full ophthalmologic exam with visual fields is required initially and every 6 months
- Using FDA approved medications by Acceptable Protocol
- Tolerate medications well without major side effects
- Under the care of physician experienced in HIV treatment
- No other disqualifying conditions or medication

**Amnesty for Previous Concealment of Treatment**

Those pilots who have previously concealed treatment for their condition may be allowed Special Issuance Authorizations after they have released complete information about their condition and treatment, if they meet the above criteria. HIV Seropositivity Protocol. Dr. Warren Silberman, Manager of the FAA Aeromedical Certification Division, released a statement concerning his policy on pilots who are interested revealing complete medical information on future Airman Medical Applications. VFS encourages all pilots to report significant medical information completely and honestly on all medical applications.

**Administrative Procedures**

Initial Special Issuance Authorizations for HIV controlled with medication are granted by the the Aermedical Certification Division or the Regionalo Flight Surgeons' offices. Renewals of SIAs, if there has been no adverse changes in clinical status, are granted by the both the Regional Flight Surgeon's office and the Aeromedical Certification Division (AMCD) in Oklahoma City. This is usually a faster process if all appropriate information is included in the package and forwarded to the FAA in a timely basis.

**VFS Waiver Assistance**

VFS conservatively estimates that there are 100-200 pilots with HIV or AIDS currently flying without reporting their condition to the FAA or who are not taking medication as recommended by their physician. VFS encourages all pilots to seek the optimum medical treatment for whatever condition afflicts them. We also strongly encourage full disclosure and honest reporting to the FAA of treatment for medical conditions. We will assist pilots with questions regarding the optimum way to report treatment for medical conditions. Contact us through our Confidential Questionnaire. Members of the National Gay Pilots Association should contact their officers for discounted rates for VFS services.

VFS link to FAA Protocol for HIV Disease Evaluation

http://www.aviationmedicine.com

Virtual Flight Surgeons Inc.
14707 E. 2nd Ave., Suite 210
Aurora, CO 80011

Phone: (720) 857-6117

Quay Snyder, MD, and Keith Martin, MD    ATTN'.

3

**EXHIBIT  D**



U.S. Department
of Transportation

**Federal Aviation
Administration**

Western-Pacific Region
Office of Regional Counsel

P.O. Box 92007
Los Angeles, CA 90009-2007
Telephone: (310) 725-7105
Fax: (310) 725-6816

March 22, 2005

Case No. 2005WP900005

OVERNIGHT MAIL,
CERTIFIED MAIL - RETURN RECEIPT REQUESTED
AND BY REGULAR MAIL

STANMORE CAWTHON COOPER
232 COOLINGWOOD ST.
SAN FRANCISCO, CA 94114-2419

### EMERGENCY ORDER OF REVOCATION

Under 49 U.S.C. § 46105(c), the Administrator has determined that an emergency exists related
to safety in air commerce and that immediate action to revoke your private pilot certificate,
airman medical certificate, and any other airman certificate you hold is required. The reasons for
this determination are set forth in the paragraph below entitled "Determination of Emergency."

Based on an investigation and all evidence presently before the Administrator, she has
determined that:

1. You are now the holder of Private Pilot Certificate No. 1608377, and an airman
   medical certificate issued on or about September 8, 2004.

2. On several occasions you submitted applications for airman medical certificates
   with Aviation Medical Examiners, including:

   a. September 8, 2004;
   b. September 18, 2002;
   c. September 19, 2000; and
   d. September 8, 1998.

2-C: 0001

3. On each of the above-referenced applications, you certified that all of the statements and answers provided by you on the applications were complete and true to the best of your knowledge.

4. In part, as a result of your certifications on each of the above-referenced applications, you were issued an airman medical certificate.

5. On your applications referenced in paragraph 2 above, you represented that you only take the medication Lipitor.

6. Your representations that you did not use any medication, prescription or nonprescription, other than Lipitor was intentionally false in that you knew you were also taking medications to control your HIV/AIDS-related infection.

7. On your applications referenced in paragraph 2 above, you represented that you had not ever had or now have any neurological disorders.

8. Your denials on said applications that you had not ever had or now have any neurological disorders were intentionally false in that you knew you had peripheral neuropathy due to your HIV infection.

9. As a result of your health conditions referenced in paragraphs 6 and 8, above, the Federal Air Surgeon has determined that you do not meet the general medical standards to hold an airman medical certificate of any class.

By reason of the foregoing circumstances, you violated the following section of the Federal Aviation Regulations:

Section 67.403(a)(1), which states that no person may make or cause to be made a fraudulent or intentionally false statement on any application for a medical certificate or on a request for any Authorization for Special Issuance of a Medical Certificate (Authorization) or Statement of Demonstrated Ability (SODA) under this part.

Based on the foregoing facts and circumstances, the Administrator has determined that you are not eligible for medical certification pursuant to Sections 67.113(b)(1) and (2), 67.213(b)(1) and (2), 67.313(b)(1) and (2) of the Federal Aviation Regulations, 14 C.F.R. §§ 67.113(b)(1) and (2), 67.213(b)(1) and (2), 67.313(b)(1) and (2), in that you have an organic, functional, or structural disease, defect, or limitation that the Federal Air Surgeon, based on the case history and appropriate, qualified medical judgment relating to the condition involved finds (1) makes you unable to safely perform the duties or exercise the privileges of the airman certificate applied for or held; and (2) may reasonably be expected, for the maximum duration of the airman medical certificate applied for or held, to make you unable to perform those duties or exercise those privileges.

2-C: 0002

As a result of your intentional falsifications, the Administrator finds that you lack the qualifications necessary to hold a private pilot certificate, airman medical certificate, or an airman certificate of any kind. She therefore has determined that safety in air commerce or air transportation and the public interest require the revocation of any and all airman certificates you hold, including any airman medical certificates. The Administrator further finds that an emergency requiring immediate action exists with respect to safety in air commerce or air transportation. Accordingly, this Order is effective immediately.

NOW, THEREFORE, IT IS ORDERED, pursuant to the authority vested in the Administrator by 49 U.S.C. §§ 44709(b) and 46105(c) that:

(a) Effective immediately, your Private Pilot Certificate No. 1608377, your airman medical certificate issued on or about September 8, 2004, and any other airman certificate, including any airman medical certificates you hold are hereby revoked on an emergency basis;

(b) Said certificates be surrendered immediately by mail or delivery to the Regional Counsel of the Federal Aviation Administration, Post Office Box 92007, Los Angeles, CA 90009, or at the Office of the Regional Counsel, Room 6007, 15000 Aviation Boulevard, Hawthorne, California 90250; and

(c) No application for a new airman certificate shall be accepted from you, nor shall any airman certificate be issued to you, without prior written authorization for such action being given on behalf of the Administrator.

## DETERMINATION OF EMERGENCY

Under 49 C.F.R. § 46105(c), the Administrator has determined that an emergency exists related to safety in air commerce. This determination is based on your lack of qualification to hold an airman certificate because of the nature and seriousness of the violations set forth in this Order. Your multiple false entries made on your airman medical applications were done with the intention of hiding your true medical history. Your failure to disclose all of the requested medical information was calculated to hide what you knew to be relevant information necessary to determine your medical qualifications to hold an airman medical certificate. Your actions deliberately circumvented the medical certification process established by the Federal Aviation Administration.

FAA Order 2150.3A, Appendix 4 (page 19, paragraph 41) recommends certificate revocation as the appropriate sanction for intentional falsification. Air safety depends on, among other things, the trustworthiness of all certificate holders functioning in the system. Certificate holders who intentionally falsify required records such as airman medical applications, for whatever purpose, compromise the airman certification process and thereby pose a threat to air safety. Your willingness to make false representations in order to obtain an airman medical certificate, regardless of your qualification to hold such certificate shows that you cannot be trusted to

maintain the integrity of aviation's trust-based record-keeping system. Thus, your actions as described above clearly reflect a lack of the qualifications necessary to hold an airman certificate.

The Administrator therefore finds that the need to provide immediate protection to the public from the risks posed by an unqualified certificate holder constitutes an emergency related to safety in air commerce. This determination is based on the Administrator's judgment that a certificate holder who thwarts the medical certification process by intentionally making false entries on airman medical applications lacks the veracity required of a certificate holder and as a result, poses an unacceptable risk to safety in air commerce.

In addition, the Administrator has also determined that an emergency exists related to safety in air commerce due to your failure to meet minimum medical standards required to hold an airman medical certificate of any class. Accordingly, the Administrator has determined that you pose an ongoing and unacceptable risk to aviation safety.

In conclusion, the Administrator has determined that under the criteria of FAA Order 2150.3A, paragraph 206.c. (pages 25-26 of Chapter 2) your conduct as alleged in this Order demonstrates that you presently lack the degree of care, judgment, and responsibility required of the holder of a private pilot certificate, an airman medical certificate, or an airman certificate of any kind. The Administrator therefore finds in accordance with 49 U.S.C. § 46105(c) and the guidance found in FAA Order 2150.3A paragraphs 206.d. (pages 26-27 of Chapter 2) and 1202.h. (pages 144-145 of Chapter 12) that the exercise of the privileges of your certificates while any proceedings related to the issuance of this Order are pending is contrary to safety and the public interest.

You may appeal from this Order in accordance with the appeal rights described below.

MONROE P. BALTON
Regional Counsel
Telephone: (310) 725-7100
Facsimile: (310) 725-6816

## APPEAL

You may appeal from this Emergency Order within ten (10) days from the date of its service, which is **March 22, 2005**, by filing a Notice of Appeal with the Office of Administrative Law Judges; National Transportation Safety Board; Room 4704; 490 L'Enfant Plaza East, SW; Washington, DC 20594 ((202) 314-6150). The National Transportation Safety Board's (NTSB's) Rules of Practice in Air Safety Proceedings, 49 C.F.R. part 821, apply to appeals to the NTSB. An executed original and three (3) copies of your Notice of Appeal must be filed with the NTSB. If you appeal, a copy of your Notice of Appeal also must be furnished to the FAA's attorney at the address listed in this Emergency Order. If you file an appeal to the NTSB, a copy

of this Emergency Order will be filed with the NTSB as the Administrator's Complaint in that proceeding.

You may also seek review of the FAA's determination that an emergency exists in this case, which makes this order immediately effective. You may request such review in a written petition filed within two days after your receipt of this order. Petitions for review of FAA emergency determinations must be served, with a copy of the FAA's emergency order attached to the petition, by facsimile or by an expedited means that ensures next-day delivery: 1) on the Office of Administrative Law Judges; National Transportation Safety Board; Room 4704; 490 L'Enfant Plaza East, SW; Washington, DC 20594 (facsimile (202) 314-6158); and 2) simultaneously and by the same means, on the FAA's attorney assigned to this case, Naomi Tsuda, Deputy Regional Counsel, 15000 Aviation Blvd., Suite 6007, Hawthorne, CA 90250 **(facsimile (310) 725-6816; telephone (310) 725-7105)**. The NTSB has published in the Federal Register the rules of practice that apply to its review of the FAA's emergency determinations. A copy of the rules, which became effective on June 30, 2003, is available at 68 Fed. Reg. 22623 (2003) or through the NTSB's website at http://www.ntsb/gov/alj/legal.htm.

Whether or not you elect to appeal from this Emergency Order, you must surrender your Private Pilot Certificate No. 1608377, your airman medical certificate issued on or about September 8, 2004, and any other airman certificate you hold, including any airman medical certificates you hold, to the Regional Counsel at the address listed in this Emergency Order. In the event that you have lost or destroyed your certificates, you will be required to execute a sworn declaration setting forth the circumstances that make you unable to surrender your certificates.

**ENCLOSURE:**
FAA Order 2150.3A, paragraphs 206(c) and (d), and 1202(h).
cc: AFS-760, AWP-300, AAM-300