1  James M. Wood (SBN 058679)
   REED SMITH LLP
2  1999 Harrison Street, Suite 2400
   Oakland, CA 94612-3572
3  Telephone:   510.763.2000
   Facsimile:   510.273.8832
4  Email: JMWood@reedsmith.com

5  Tiffany Renee Thomas (SBN 239085)
   REED SMITH LLP
6  Two Embarcadero Center, Suite 2000
   San Francisco, CA 94111-3922
7  Telephone:   415.543.8700
   Facsimile:   415.391.8269
8  Email: Tthomas@reedsmith.com

9  Attorneys for Plaintiff Stanmore C. Cooper

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| STANMORE C. COOPER, a California Resident, | Civil Case No.: 3:07-cv-01383-VRW |
|---|---|
| Plaintiff, | **FIRST AMENDED COMPLAINT FOR:** |
| v. | **VIOLATION 5 U.S.C. § 522A (THE PRIVACY ACT OF 1974)** |
| FEDERAL AVIATION ADMINISTRATION, SOCIAL SECURITY ADMINISTRATION, UNITED STATES DEPARTMENT OF TRANSPORTATION, | |
| Defendants. | |

Plaintiff Stanmore C. Cooper ("Cooper") alleges as follows:

**PRELIMINARY STATEMENT**

1.  This action arises from the extensive exchange of protected, private medical information and records among the Federal Department of Transportation, the Federal Aviation

Administration, and the Social Security Administration under the auspices of "Operation Safe Pilot". Each exchange was violative of the Privacy Act of 1974 (5 U.S.C. § 522a).

## JURISDICTION AND VENUE

2.   This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and 5 U.S.C. § 552a(g)(5) because this action seeks to redress a violation of the Privacy Act of 1974. This Court has supplemental jurisdiction over the remaining cause of action alleged pursuant to 28 U.S.C. § 1367(a). Venue is proper in this judicial district pursuant to 5 U.S.C. § 552a(g)(5), as Plaintiff resides in this district.

## PARTIES

3.   Plaintiff Stanmore C. Cooper (referred to hereafter as "Cooper" or "Plaintiff"), an individual, is, and at all times mentioned was, a resident of the City and County of San Francisco, California.

4.   Defendant Federal Aviation Administration (referred to as "FAA") is an agency of the United States Department of Transportation. FAA regulates civil aviation in the United States, including the licensing of pilots.

5.   Defendant United States Department of Transportation (referred to as "DOT") is a Cabinet-level executive department of the United States government concerned with the national transportation system. FAA is a branch of DOT.

6.   Defendant Social Security Administration (referred to as "SSA") is an independent agency of the United States government which pays retirement, disability and survivors benefits to workers and their families, and administers the Supplemental Security Income program. SSA is also responsible for the issuance of Social Security numbers.

7.   Defendants FAA, DOT, and SSA will be referred to as "Defendants."

FIRST AMENDED COMPLAINT

## STATEMENT OF FACTS

### BACKGROUND FACTS

8.  Defendant FAA issued Cooper his Private Pilot Certificate on September 11, 1964. With over 2,000 hours as Pilot-In-Command since then, Cooper has never been in any aviation-related incident or accident. From September 11, 1965 to March 21, 2005, FAA never charged Cooper with violating any federal aviation regulations. Cooper is currently licensed by FAA as a Private Pilot, Single Engine Airplane Land.

9.  While licensed, Cooper discovered in 1985 that he was HIV-positive. Because FAA at the time would not issue a medical certificate to a HIV-positive individual who was taking anti-retroviral medications, he voluntarily grounded himself and did not renew his medical certificate. A medical certificate is issued as a condition to receiving a Private Pilot Certificate. Mr. Cooper later accepted a position with Visa International where he was employed as a Senior Network Engineer.

10. In July, 1994, Cooper applied for and received an FAA Third Class Medical Certificate without disclosing his HIV status or listing the anti-retroviral drugs he was taking. Cooper used this Medical Certificate solely to act as "Safety Pilot" while flying with friends maintaining instrument flying currency, and was never used for Cooper to act as pilot-in-command. Between the July, 1994, Medical Certificate application and his subsequent Medical Certificate application in September, 1998, FAA records show Cooper did not log any flight time since Cooper's total hours on both applications was 1,712 hours.

11. By June 1995, Cooper had lost considerable weight and suffered from peripheral neuropathy in his lower extremities, chronic diarrhea, and a failing immune system due to his HIV-infection. Because of his failing health, in August 1995, Cooper left his position at Visa International and applied for Social Security long-term disability benefits based upon these HIV-related complications. His HIV status and complications were the basis for the disability claim and were disclosed in his Social Security application.

FIRST AMENDED COMPLAINT

12. In applying for these Social Security benefits, SSA advised Cooper about his privacy rights and affirmed that his personal medical information would be shared only with other federal agencies when this information would be needed to assist in the administration of programs under the Social Security Act and other federal, state, and local health and income maintenance programs concerning determinations related to eligibility, benefit amounts, or benefits status. *See* Social Security Online web article entitled "Government Information Exchange," attached hereto as Exhibit A. Cooper believed this information and relied upon it to be accurate and true. Cooper began receiving Social Security disability benefits in August 1995.

13. In early 1996, a new class of anti-HIV drugs, protease inhibitors, became available to patients with HIV, but due to manufacturing limitations, access to these new drugs was determined by a lottery. Cooper was selected to participate in the limited access program to these protease inhibitors and began taking them, as prescribed by his health care provider, in combination with previously available nucleoside and non-nucleoside reverse transcriptase inhibitors. As a result, Cooper's health care providers determined that his health rapidly improved. His viral load plummeted, his peripheral neuropathy and chronic diarrhea subsided, and he returned to his previous weight and energy.

14. After one year on disability, Cooper terminated his receipt of Social Security benefits and returned to work at Visa International in August 1996 as a Chief Network Architect.

15. In early 1998, Cooper learned that FAA had, in November of 1997, begun issuing "special issuance" medical certificates to HIV-infected persons. With his renewed health and news of certificated HIV-positive pilots, Cooper became interested in obtaining a Third Class Medical Certificate which would permit him to resume his normal flying activities.

16. Plaintiff is informed and believes, and thereon alleges, that at the time FAA had not made the eligibility requirements for the "special issuance" certificates public; interested applicants were required to submit all of their medical records from the date of their infections to FAA for review.

17. Uninformed as to FAA Special Issuance Medical Certificate eligibility requirements and concerned that he would be arbitrarily disqualified, Cooper did not submit this information.

Instead, Cooper applied for and obtained a medical certificate in 1998 without disclosing his HIV status on his application. Cooper obtained his Third Class Medical Certificate in order to resume his normal flying activities.

18. In 2000, Cooper saw the first published certification criteria for issuance of medical certificates to HIV-infected persons. *See* Federal Aviation Administration article entitled "Guidelines for the Medical Certification of Airmen with HIV-Related Conditions," attached hereto as Exhibit B. He then verified that his cell counts and viral loads were within the applicable criteria and in 2000, 2002, and 2004 applied for and obtained medical certificates without disclosing his HIV status.

19. In February 2005, Cooper read a magazine article that announced that FAA Aeromedical Certification Division and the Civil Aeromedical Institute had issued a policy statement which indicated that HIV-infected individuals who voluntarily revealed their previously unreported infections, submitted their medical records, and did not have histories of aviation accident or incidents or positive drug tests would not be subject to disciplinary action. *See* Virtual Flight Surgeons Inc. article entitled "HIV/AIDS," attached hereto as Exhibit C. As a result of reading this article, Cooper began the process of collecting his medical records for submission to FAA but did not have the opportunity to submit them.

## DISCLOSURE OF COOPER'S HIV STATUS

20. Plaintiff is informed and believes, and thereon alleges, that following the events of September 11, 2001, SSA received numerous proposed investigative projects from various agencies concerning the Social Security number ("SSN") misuse by those with access to critical government infrastructure sites.

21. Plaintiff is informed and believes, and thereon alleges, that in 2003, SSA reviewed a proposed project submitted by the DOT Office of Inspector General entitled "Operation Safe Pilot." The sole purpose of "Operation Safe Pilot" was to identify any active FAA-licensed pilot who had obtained a license though the misrepresentation of a SSN on an FAA application. The review was not intended to verify benefit eligibility, effectuate savings to SSA, or to terminate benefits. The

sole purpose of the review was to ensure that pilots were who they said they were, and on this basis, SSA approved this project.

22.  Plaintiff is informed and believes, and thereon alleges, that FAA not only provided SSA with the names and SSNs of licensed pilots needed to effectuate the stated purposes of "Operation Safe Pilot," but that it also provided SSA with complete copies of pilots' medical certification records and files. Based on this information, SSA discovered that a number of FAA-licensed pilots under review for potential SSN misuse were at the time drawing benefits from SSA based on total disability while simultaneously certifying their medical fitness to FAA. As Cooper ceased receiving SSA benefits in 1996, he did not fall into this category of pilots.

23.  Plaintiff is informed and believes, and thereon alleges, that SSA reported its finding to FAA and provided FAA with the Social Security files, including confidential medical records, of licensed pilots who were suspected of failing to disclose diagnoses of significant illness, including SSA files concerning Cooper. These files contained the confidential information of Cooper's HIV status which under state and federal law, as well as under SSA guidelines, is confidential and protected from disclosure by the Privacy Act and the California Constitution.

24.  The disclosure of Cooper's confidential information was not pursuant to any "routine use" or legitimate law enforcement function because it was outside of the scope of the stated purposes of the Operation Safe Pilot program.

25.  Plaintiff is informed and believes, and thereon alleges, that based solely upon the illegal disclosure and review of Cooper's confidential Social Security files and medical records, FAA issued an Emergency Order of Revocation of Cooper's private pilot certificate on March 22, 2005. *See* Emergency Revocation Order, attached hereto as Exhibit D.

26.  On March 22, 2005, Lisa Glazzy, who identified herself as a special agent with the Department of Transportation, left a message on Cooper's home phone stating that DOT wished to discuss some "irregularities" in his FAA medical certificate application. Cooper returned the call and scheduled a meeting to be held on March 23 at a local Starbucks with Agent Glazzy and an Agent Stephen Jackson.

27. At the meeting, Agents Glazzy and Jackson showed Cooper numerous records from his Social Security disability file which, according to Agent Jackson, DOT obtained as a result of a "computer match" between SSA and FAA records. The agents also provided Cooper with a copy of the revocation order and demanded his pilot certificate, medical certificate, and log book. Cooper surrendered all three items to Agents Glazzy and Jackson.

28. Learning that SSA had disclosed his HIV-status to other federal agencies left Cooper extremely upset, anxious, and fearful of social ostracism.

29. Cooper timely appealed the revocation to the National Transportation Safety Board, and in the process obtained a copy of FAA's evidentiary file. This file contained portions of Cooper's SSA file, including medical records sent to SSA which indicated that Cooper received treatment for HIV-related infection(s). The case was captioned *Blakey v. Cooper*, Docket No. SE-17351.

30. On or about August 30, 2005, Cooper was indicted on three felony counts of making a false statement to a government agency based solely upon his non-disclosure of his HIV status. Each of these counts carried with them a fine of up to $250,000 and a maximum of five years in prison. The case was captioned *U.S. v. Cooper*, CR 05-00549-VRW.

31. On March 7, 2006, Cooper pleaded guilty to a single misdemeanor pursuant to a plea agreement. As a result, the Court fined Cooper $1,000 and sentenced him to two years of unsupervised probation, but allowed him to pursue recertification as a private pilot.

32. After the conclusion of the criminal case, Cooper began the process of regaining his pilot certificate. FAA conducted a review of Cooper's medical history, which spanned more than twenty years. At age 64, Cooper was subjected to cognitive screening tests in which he scored in the 50th percentile or higher when measured against current airline captains age 55-60. Cooper then re-entered ground school and submitted to oral and written examinations as well as a flight test.

33. On September 11, 2006, forty-two years to the day that he first obtained his pilot's license, Cooper received a medical certificate and his private pilot's certificate.

34. Although his right to fly as a HIV-positive pilot has been vindicated, Cooper has suffered and will continue to suffer as a direct and proximate result of the illegal and

FIRST AMENDED COMPLAINT

unconstitutional violation of his right to privacy humiliation, embarrassment, mental anguish, fear of social ostracism, and other severe emotional distress.

### FIRST CLAIM FOR RELIEF

### Violation of the Privacy Act of 1974 - 5 USCS § 552a
### Against All Defendants

35. Plaintiff re-alleges paragraphs 1 through 33 of this Complaint as if fully set forth herein.

36. Among its many other functions, the Privacy Act (Act), 5 U.S.C.S. § 552a, safeguards individuals from capricious dissemination of personal information by the government. Subsection (b) of the Act, forbids an agency of the United States from disclosing information in its files to any person or to another agency without the express consent of the individual to whom the information pertains. 5 U.S.C.S. § 552a(b). This provision is subject to several exceptions, none of which apply to the present case.

37. A civil action for damages lies whenever any agency violates any of the provisions of The Privacy Act in such a way as to have an adverse effect on an individual. 5 U.S.C.S. § 552a(g)(1)(D).

38. Each exchange and use of Cooper's confidential medical information about his HIV status among the Defendants, and each of them, without Cooper's consent, as described herein, constituted a violation of the Privacy Act for each such disclosure and use of the information.

39. In disclosing Cooper's medical records, Defendants each acted intentionally and/or willfully and outside of the stated scope of "Operation Safe Pilot."

40. Defendants' unauthorized use of Cooper's confidential medical information, including the disclosure of his HIV status and any use of or reliance upon such information has caused Cooper to suffer humiliation, embarrassment, mental anguish, fear of social ostracism, and other severe emotional distress.

41.  Cooper's humiliation, embarrassment, mental anguish, fear of social ostracism, and other severe emotional distress were proximately caused by Defendants' unauthorized disclosure and use of his confidential medical information.

42.  As a proximate result of each of the Defendant's disclosure and reliance upon the illegal disclosure of this confidential information, Cooper suffered, and will continue to suffer, "adverse effects" in the form of general and special damages, including, but not limited to, pain and suffering, humiliation, embarrassment, mental anguish, fear of social ostracism, and other severe emotional distress in excess of $1,000.

## PRAYER

WHEREFORE, Plaintiff, Stanmore C. Cooper, prays for judgment against Defendants, and each of them, as follows:

1. For general damages in an amount according to proof at trial and as permitted by law;
2. For special damages in an amount according to proof at trial and as permitted by law;
3. For prejudgment interest in an amount according to proof at trial;
4. For reasonable attorneys' fees and costs of suit incurred herein pursuant to 5 U.S.C. § 552a(g)(1)(B);
5. For attorneys' fees and costs of suit incurred by Cooper in *U.S. v. Cooper* pursuant to 5 U.S.C. § 552a(g)(1)(B) as well as for fees and costs of suit incurred by Cooper in *Blakey v. Cooper*; and
6. For such other and further relief as the Court may deem just and proper.

DATED: July 10, 2007

REED SMITH LLP

By _____
James M. Wood
Tiffany Renee Thomas
Attorneys for Plaintiff
Stanmore C. Cooper